Jasmine M. Peters, Wyo. Bar #7-5714
Holland & Hart LLP
2020 Carey Avenue, Suite 800
Cheyenne, WY 82001
Telephone (307) 778-4242
Email: JMPeters@hollandhart.com

*Attorneys for Defendants Brandon Stewart, Robert Bell, Vecco Aerospace Group, Inc., Cendry Capital, Inc., Falcon Jacksonville, LLC d/b/a/ Vaero, and Skyhawk Capital, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| LEONARD LEVIE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRANDON STEWART et al.,<br><br>Defendants. | Case No. 2:26-cv-00240-KHR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 4
A. Stewart and AIAC Enter a Commission Arrangement. ........ 4
B. The Formation and Operation of MPG Undermine Plaintiffs' Ownership Claim. . 5
1. Stewart Sourced the Sterling Heights Deal, but Levie Declined to Participate. ........ 5
2. Stewart Forms MPG As a Single Member LLC, and Acquires MB Aerospace ........ 6
3. Plaintiffs Were Not Involved in Ownership, Management or Operation of MPG. ........ 7
4. The Kaman Wichita Acquisition ........ 9
5. Stewart, through VAG, Inc., Purchases Falcon ........ 9
6. The Trademark Applications and Their July 13, 2026 Abandonment ........ 10
7. Plaintiffs' Intimidation Campaign and Unauthorized Board Notices ........ 10
C. The Absence of Any Wyoming Operations ........ 12
III. LEGAL STANDARD ........ 12
IV. ARGUMENT ........ 13
A. Jurisdiction and Venue: The Court Lacks Personal and Subject Matter Jurisdiction, and Venue Is Improper. ........ 13
B. Plaintiffs Cannot Show a Likelihood of Success. ........ 14
1. Plaintiffs Cannot Establish That Levie or Batista Became Members of MPG. ........ 14
2. Plaintiffs' Claims for Injury to MPG Are Derivative and Improperly Pleaded. ........ 17
3. The DTSA Claim Is Circular and Independently Defective. ........ 18
4. The Lanham Act Claim Fails Because the Plaintiffs Do Not Own the Marks. ........ 19
C. Plaintiffs Have Not Shown Irreparable Harm. ........ 20
1. Plaintiffs Have Pled Their Injury as Money Damages. ........ 20
2. No Trade Secret or Trademark Injury Is Imminent or Irreparable. ........ 22
3. Plaintiffs' Delay Refutes Their Claim of Emergency ........ 22
4. The Alleged Reputational and Market-Confusion Harms Are Speculative. ........ 23
5. The Record Cannot Support Extraordinary Relief ........ 23



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

D. The Balance of Equities and the Public Interest Weigh Against an Injunction. ... 23
E. Rule 53 Does Not Authorize Appointment of a Master to Select Party's Counsel. ... 24
V. CONCLUSION ... 25



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
722 F.3d 1229 (10th Cir. 2013) ....19, 20

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)....20

*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*,
562 F.3d 1067 (10th Cir. 2009) ....12

*Bowen v. Smith*,
838 P.2d 186 (Wyo. 1992)....25

*Camick v. Holladay*,
758 F. App'x 640 (10th Cir. 2018) ....19

*Double Eagle Alloys, Inc. v. Hooper*,
134 F.4th 1078 (10th Cir. 2025) ....18

*Drill Tech Drilling & Shoring, Inc. v. Goshen Cnty. Irrigation Dist.*,
No. 26-CV-144-SWS, 2026 WL 1990826 (D. Wyo. July 2, 2026)....24

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....22

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)....22

*First W. Cap. Mgmt. Co. v. Malamed*,
874 F.3d 1136 (10th Cir. 2017) ....22

*Frankel v. Guardian Law*,
No. CH-2024-000009, 2024 WL 4547274 (Wyo. Ch. Oct. 15, 2024) ....14

*Fritchel v. White*,
2019 WY 117, 452 P.3d 601 (Wyo. 2019) ....17

*GTE Corp. v. Williams*,
731 F.2d 676 (10th Cir. 1984) ....13, 22

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991) ....23



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

*Heideman v. S. Salt Lake City*,
348 F.3d 1182 (10th Cir. 2003) ....................20, 21

*Hotel 24, LLC v. Estate of Vallario*,
No. 652825/2014, 2014 WL 5872606 (N.Y. Sup. Ct. Nov. 13, 2014) ....................21

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) (Powell J., concurring) ....................14

*Kassirer v. Gotlib*,
248 A.D.3d 472 (N.Y. App. Div. 2026) ....................15

*KeyBank Nat'l Ass'n v. Williams*,
No. 21-1384, 2022 WL 402379 (10th Cir. Feb. 10, 2022) ....................22

*La Buy v. Howes Leather Co.*,
352 U.S. 249 (1957) ....................25

*LS3 Inc. v. Cherokee Nation Strategic Programs, L.L.C.*,
No. 21-1385, 2022 WL 3440692 (10th Cir. Aug. 17, 2022) ....................18, 19

*Management Nominees, Inc. v. Skowronska*,
No. 185-803, 2018 WL 8951121 (Wyo. Dist. Mar. 28, 2018) ....................15

*Mantle v. N. Star Energy LLC*,
2019 WY 29, 437 P.3d 758 (Wyo. 2019) ....................17

*Morningside Church Prods., Inc. v. Am. Biotech Labs, LLC*,
No. 6:20-CV-03090-MDH, 2023 WL 11951217 (W.D. Mo. June 5, 2023) ....................15, 17

*Rehab Dep't, LLC v. Ark Post Acute Networks, LLC*,
No. 23-CV-2554-SDM-LSG, 2024 WL 5372683 (M.D. Fla. Dec. 30, 2024) ....................16

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ....................12, 21

*Schmidt v. Lessard*,
414 U.S. 473 (1974) ....................24

*Schrier v. Univ. Of Co.*,
427 F.3d 1253 (10th Cir. 2005) ....................12, 23

*Steede v. Levy*,
No. 25-2136-DDC-TJJ, 2025 WL 1029422 (D. Kan. Apr. 7, 2025) ....................13

*Tallichet v. Jackson Hole Cmty. Radio, Inc.*,
2026 WY 56, 589 P.3d 1261 (Wyo. 2026) ....................15



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

*Tyson et al. v. Levie*,
Index No. 653495/2018 (N.Y. Sup. Ct.) ........ 2

*Underwood v. Bank of Am. Corp.*,
996 F.3d 1038 (10th Cir. 2021) ........ 19, 20

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 4, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 12

*Woods v. Wells Fargo Bank Wyoming*,
2004 WY 61, 90 P.3d 724 ........ 25

**Statutes**

15 U.S.C. § 1055 ........ 20

15 U.S.C. § 1057(b) ........ 20

15 U.S.C. § 1114 ........ 20

15 U.S.C. § 1116(a) ........ 22

15 U.S.C. § 1125(a)(1)(A) ........ 19

15 U.S.C. § 1127 ........ 20

18 U.S.C. § 1836(b)(1) ........ 3, 18

18 U.S.C. § 1836(b)(3)(A)(i) ........ 22

18 U.S.C. § 1839(4) ........ 18

18 U.S.C. § 1839(5) ........ 19

28 U.S.C. § 1391(b) ........ 14

28 U.S.C. § 1391(b)(1) ........ 14

28 U.S.C. § 1391(b)(2) ........ 14

Wyo. Stat. Ann. § 17-29-102(a)(xiv) ........ 15

Wyo. Stat. Ann. § 17-29-104(a) ........ 18

Wyo. Stat. Ann. § 17-29-110(a) ........ 15



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Wyo. Stat. Ann. § 17-29-401(b) ....................15
Wyo. Stat. Ann. § 17-29-401(d) ....................14, 15
Wyo. Stat. Ann. § 17-29-410 ....................18
Wyo. Stat. Ann. § 17-29-901(b) ....................17
Wyo. Stat. Ann. §§ 17-29-902, -904....................17
Wyoming Limited Liability Company Act....................1

**Other Authorities**

Fed. R. Civ. P. 23.1 ....................17
Fed. R. Civ. P. 53 ....................24, 25
Fed. R. Civ. P. 53(a)(1)(C) ....................25
Fed. R. Civ. P. 65 ....................11
Fed. R. Civ. P. 65(d)(1)....................24
Wyo. R. Prof'l Conduct 4.4(a)....................12



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

## I. INTRODUCTION

Leonard Levie has never signed a document for Michigan Precision Group LLC ("MPG"). He never funded it, never guaranteed its obligations, never called a meeting, never cast a vote, never took a distribution, and never met the executive who has run its businesses for four years. He does not appear in MPG's formation records, annual reports, tax filings, bank authorizations, or beneficial ownership report. He now asks this Court, on an emergency basis and before any defendant has answered, to take what Brandon Stewart and Robert Bell III built and give it to him.

At its core, this case is a dispute about who owns MPG, a Wyoming limited liability company and single-member holding company formed by Stewart in April 2022. Plaintiffs say Leonard Levie ("Levie") holds seventy-five percent of MPG and Jonathan Batista holds five percent of MPG. Brandon Stewart ("Stewart") says they do not. That question is governed by the Wyoming Limited Liability Company Act and belongs in a court of general jurisdiction.

The extraordinary relief Plaintiffs request requires extraordinary proof, and Plaintiffs offer none. They cite no articles of organization, operating agreement, member consent, tax record, or beneficial ownership filing establishing their claimed interests, and identify no role they played in turning two distressed acquisitions into operating businesses. (Declaration of Brandon Stewart ("Stewart Decl."), ¶¶ 8, 29–30, 35–36, 39–45, 72.)

Plaintiffs' own record between September 2, 2022, through July 2, 2026, shows successive periods of radio silence of fourteen months, seven months, and then twenty-five consecutive months during which Stewart made decisions for MPG as the sole owner and, together with Defendant Robert Bell III ("Bell"), ran the day-to-day affairs of MPG's corporate acquisitions. (Stewart Decl., ¶¶ 55, 59, 67, 72; Declaration of Robert Bell III ("Bell Decl."), ¶¶ 6–7.) In all that time, not once did Plaintiffs request financials, board meetings, or management updates. (Stewart Decl., ¶ 65; Bell Decl., ¶¶ 10–11.)

Levie's four years of silence ended in July 2026, and the record shows what ended it. Plaintiffs learned of a rumored $31 million payment to Falcon Jacksonville, LLC d/b/a VAERO



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

("Falcon") in connection with *Kaman v. Falcon Jacksonville*, pending in the Delaware Court of Chancery, and asked "how, if at all, that payment impacts the financial interests of the Members of the Company." (Compl. Ex. 41.) Only after word of a supposed windfall did Plaintiffs request access to MPG's books and records. The timing of Levie's sudden interest reveals everything about his motives.

The relief Levie requests refutes the ownership he asserts. He asks this Court to remove the people who run these businesses, to freeze their assets, and to install a stranger over ITAR-registered facilities in the middle of contract performance. An owner does not ask a court to do that to his own company. A seventy-five percent member with four years of accrued value at stake would understand what Levie is content to ignore—that customers, lenders, auditors, and regulators do not wait while a court sorts out a management fight. Levie is willing to risk destroying these businesses because he has nothing in them to lose. He contributed no capital, guaranteed no obligation, and absorbed no loss. If MPG and its subsidiaries fail tomorrow, Levie writes no check and Stewart and Bell lose everything they built. The claimant willing to see the child divided was, in Solomon's court, the one with no true claim to it.

This ownership dispute is not Levie's first. Levie acquires distressed businesses through a network of holding companies while others source and operate them, and former partners and executives have repeatedly ended up litigating with him over equity they say they were promised. In *Tyson et al. v. Levie*, Index No. 653495/2018 (N.Y. Sup. Ct.), three senior pharmaceutical executives alleged that Levie breached an oral promise to share equity in a company they built into a business then valued at over $100 million. In a January 2024 arbitration award, *Schwoeri v. Vermont Aerospace Industries, LLC*, the executive Levie tasked with acquiring and running a series of distressed manufacturers recovered on the put of his equity interest over Levie's objection. That history matters for one reason: Levie asks this Court to accept his uncorroborated account of an arrangement that appears in no operating agreement, no member consent, and no tax filing.


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Levie's approach to this dispute has been to have his counsel issue unprofessional threats—to parties, to non-parties, and even to attorneys. Before this action was filed, Levie's counsel threatened Stewart, through Stewart's counsel, that what was coming was "just the beginning of a parade of horribles" for him, that Stewart was "a young man that could still have a future," and that a year from then, "when he is bankrupt," Levie's counsel would remind Stewart's counsel that Stewart should have capitulated while he had the chance. (Declaration of David A. Perez ("Perez Decl."), ¶ 2; Ex. S.) Absent that capitulation, according to Levie's counsel, "the gloves come off." After filing, the threats only escalated: Levie's counsel advised that Stewart could "only homestead one property nationwide" and identified the residence that "will not be protected." (Perez Decl., ¶ 4, Ex. T.)

When that did not work, Levie's counsel began threatening the lawyers, threatening disqualification of and sanctions against Morrison & Foerster—including in extended correspondence to the firm's general counsel—before the firm had appeared in this case, in an evident effort to deter anyone from appearing for Defendants at all. (Perez Decl., ¶ 4, Ex. U.) Threats of personal bankruptcy, threats directed at an individual's home, and threats directed at opposing counsel are never appropriate. And when a party resorts to them before the Court has so much as received a responsive pleading, that tells the Court something. A party that falls back on threats is not a party that can fall back on the evidence or the law.

Rather than plead their ownership dispute on the merits in Wyoming state court, Plaintiffs have attached a federal trade secret claim and a federal trademark claim to the front of it, filed their complaint in a district where MPG's registered agent keeps a mailbox, and now ask this Court to decide the ownership question on an expedited basis.

Neither federal claim survives Plaintiffs' own allegations. The DTSA gives a cause of action to the *owner* of a trade secret, 18 U.S.C. § 1836(b)(1), and the Complaint identifies the owners as MPG—a defendant—and VECCO and VECCO Wichita, which are not parties at all.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

(Compl. ¶ 134.) The Lanham Act claim fails for the same reason: the Complaint places ownership of the VECCO marks in a non-party, AIAC Puerto Rico Holdings LLC (*Id.* ¶¶ 14, 163).

Critically, this Court also lacks personal jurisdiction over most of the parties Plaintiffs have sued. Stewart is domiciled in Pennsylvania and Bell in Idaho; VECCO Aerospace Group, Inc. ("VAG") and Cendry Capital, Inc. ("Cendry") are Delaware corporations; and Falcon operates in Florida. The conduct alleged occurred in Michigan, Kansas, Florida, Delaware, and Puerto Rico. The only Wyoming contact pleaded anywhere is that MPG and Skyhawk Capital, LLC ("Skyhawk") were organized at a shared registered-agent address in Sheridan. *See Walden v. Fiore*, 571 U.S. 277 (2014).

Even if the Court had power to act, Plaintiffs have not shown irreparable injury, because they have already priced their own harm at damages "believed to exceed $50 million," itemized as lost ownership interests, lost distributions, and diminution in the value of membership interests. (Compl. ¶ 188.) That is a claim for money. If Levie was promised an interest he never received, the remedy is its value; if a commission was owed under the 2011 Commission Agreement, the remedy is the commission; and if an acquisition opportunity was diverted, the remedy is the value of that opportunity. Plaintiffs reserve rescission only as something they may later seek. (Compl. ¶ 161.) Levie does not get to unwind a transaction he declined to join, or insert himself into a business he did not build, because he now regrets standing aside.

This Court should not use preliminary relief to legitimize an ownership claim unsupported by the corporate record and contradicted by the parties' conduct.

## II. BACKGROUND

### A. Stewart and AIAC Enter a Commission Arrangement.

Plaintiffs correctly note that Stewart began his association with American Industrial Acquisition Corporation ("AIAC") in 2011 pursuant to a commission agreement (the "Commission Agreement"), under which Stewart agreed to "actively seek corporate acquisition



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

prospects . . . and present such Target Companies to AIAC for its consideration." (Stewart Decl., ¶¶ 4-5, Ex. B.) Plaintiffs flatly misstate the record, however, that Stewart was a "fiduciary" of AIAC or Levie (*see* Compl. ¶ 17), a relationship that was never contemplated nor expected under the terms of the Commission Agreement. (*See* Stewart Decl., Ex. B.)

Over the course of their approximately fifteen-year business relationship, Stewart used AIAC's branding and email domain for marketing and business-development purposes. (Stewart Decl., ¶¶ 13, 50.) But Stewart's affiliation with AIAC did not mean that every acquisition he sourced belonged to AIAC, or that every acquisition vehicle Stewart formed was owned by AIAC (or Levie). (*Id.* ¶¶ 6, 14, 50, Ex. B.) Stewart and Levie co-owned *some* businesses together (*Id.* ¶ 7, Exs. C – D.)

The Commission Agreement makes that distinction explicit. For successful acquisitions, Stewart was entitled to a commission fee based on a sliding scale, along with 12.5 percent equity in the applicable holding company. (*See id.,* Ex. B.) For nominal or negative purchase-price acquisitions—like the deals at issue here—the parties agreed to negotiate an alternative commission in good faith. (*Id.*) Critically, the Commission Agreement states: "in the event of a nominal price, ***AIAC shall not acquire the Target Company unless AIAC and [Stewart] have mutually agreed to the Commission amount due to [Stewart].***" (*Id.*) (emphasis added). MB Aerospace Sterling Heights, Inc. ("MB Aerospace"), Kaman Composites – Wichita, Inc. ("Kaman Wichita"), and Falcon were nominal-price transactions. (*Id.* ¶¶ 10, 14, 62.) The Agreement therefore does not establish AIAC ownership of the entities used for those acquisitions; it confirms that nominal-price transactions required separate agreement. Those agreements never happened, and AIAC never gained ownership of the entities.

### B. The Formation and Operation of MPG Undermine Plaintiffs' Ownership Claim.

#### 1. Stewart Sourced the Sterling Heights Deal, but Levie Declined to Participate.

On February 17, 2022, Stewart emailed Levie a transaction structure prepared by Houlihan Lokey for MB Aerospace noting that the company could be acquired at a nominal purchase price.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

(Pl. Exs. 7-8.) Levie expressed initial interest but remained passive and took no part in the facility visit, management interviews, on-site due diligence, or other hands-on work necessary to bring the transaction to closing. (Stewart Decl., ¶¶ 19, 22, 25.)

Stewart's repeated outreach ultimately never matured into a commission arrangement, the condition precedent the Commission Agreement required before AIAC could "acquire [a] Target Company." (*Id.* ¶¶ 6, 22, 24, 26, Ex. B.)

On April 8, 2022, Stewart sent Levie the "75/20/5" diagram in Plaintiffs' record. But the accompanying words matter as much as the boxes on the chart: "I hope this is OK with you for the parent organization of our new company"; "I would like to reward [Batista]"; "I hope it's no problem to invite him to the equity table with you and I"; and "Let me know your thoughts or your comments." (Compl. Ex. 2.) That is language seeking agreement, not recording an already executed operating agreement. Most importantly, Levie did not respond agreeing to the structure—Stewart was again met with silence. (Stewart Decl., ¶¶ 22, 24–26.)

**2. Stewart Forms MPG As a Single Member LLC, and Acquires MB Aerospace**

While still believing that Stewart and AIAC could reach a deal for the Sterling Heights acquisition, on April 13, 2022, Stewart formed MPG. (*Id.* ¶¶ 22, 29; Ex. H.) But because no terms had been agreed to with AIAC, Stewart formed MPG without Levie, Batista, or AIAC. Stewart paid the registered agent and filing fees, and provided sole consent on behalf of MPG for Wyoming EZ Corp to serve as registered agent for service of process. (*Id.* ¶ 29; Exs. I – J.) No written operating agreement was executed at formation or thereafter. (*Id.* ¶ 30.)

On April 15, 2022, Stewart signed a stock purchase agreement on behalf of MPG to purchase 14,000 shares of MB Aerospace for the nominal price of $1.00. (*Id.* ¶ 31; Ex. O.) MB Aerospace was then rebranded VECCO on or about April 26, 2022. (*Id.* ¶ 31; Bell Decl., ¶ 3.)[1]

[1] Contrary to Plaintiffs' allegations, no letter was issued to VECCO employees stating that VECCO had been transferred to AIAC, as AIAC was not a party to the executed stock purchase agreement. (*Compare* Bell Decl., ¶ 7 *with* Compl. ¶ 51.)



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Based in Sterling Heights, Michigan, VECCO employs approximately 25 employees for each of its three facilities, which are between 60,000 – 100,000 square feet in size, and specializes in manufacturing engineering, quality, and machining operations, including highly complex, military-grade, machined assemblies in both ferrous and non-ferrous metals for the aerospace industry. (Stewart Decl., ¶ 32; Bell Decl., ¶ 13.) VECCO's customers include Lockheed Martin, Pratt & Whitney America, Pratt & Whitney Canada, Lycoming, and Collins Aerospace. (Stewart Decl., ¶ 32; Bell Decl., ¶ 13.) VECCO is managed by Stewart and Bell, who serve as the company's directors and are authorized to execute documents and take actions necessary to carry out company transactions. (Bell Decl., ¶ 8, Ex. A.)

### 3. Plaintiffs Were Not Involved in Ownership, Management or Operation of MPG.

Plaintiffs concede that Stewart managed MPG and its subsidiaries day to day. (Compl. ¶ 151.) For nearly four years, he executed acquisition and operating documents, managed company finances and operations with Bell, and acted as the person authorized to bind the businesses. (Stewart Decl., ¶¶ 29, 46–48, 55, 57, 64, 69; Bell Decl., ¶ 17.)

The records likewise confirm Stewart's ownership and control. For instance, on May 1, 2022, Stewart appointed himself and Bell as directors of VECCO in his capacity as sole shareholder of MPG (Bell Decl., ¶ 8, Ex. A.); he filed annual reports on behalf of MPG in 2023 and 2024 (Stewart Decl., ¶¶ 39–40, Exs. K – L); applied for and received an EIN from the IRS in November 2024 (identifying Stewart as the "Sole Member"), (*Id.* ¶ 41, Ex. M); continued paying MPG's registered agent invoices (*Id.* ¶ 42, Ex. N); and reported to FinCEN in February 2025 that he was MPG's sole beneficial owner. (*Id.* ¶ 43.) Plaintiffs do not appear once in any of these records. (*Id.* ¶ 44.)

The executives who ran these businesses confirm it. Bell, VECCO's chief executive officer since April 2022, has never met Levie; their only contact was one call in 2024, under five minutes, about an unrelated business. (Bell Decl., ¶ 2.) Metzger and Vernon, the chief financial and chief



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

operating officers, have never met either individual Plaintiff, and every direction they received since November 2024 came from Stewart, Bell, or Stones. (Declaration of Traci Metzger ("Metzger Decl."), ¶¶ 2, 8–9; Declaration of David Vernon ("Vernon Decl."), ¶ 5.) None of the three learned that Plaintiffs claimed to own any part of these companies until July 8, 2026, when Greenberg emailed them demanding a members' meeting and the companies' confidential financials. (Bell Decl., ¶ 9; Metzger Decl., ¶ 8; Vernon Decl., ¶ 6.) In more than four years, no Plaintiff cast a member vote, took a distribution, received a K-1, attended a management meeting, approved a budget, directed an employee, or exercised authority over a customer or supplier; Levie never visited a facility or met a customer. (Bell Decl., ¶¶ 11, 18, 22; Stewart Decl., ¶ 72; Metzger Decl., ¶¶ 4, 6–7; Vernon Decl., ¶¶ 5, 15.)

And while between April and September 2022, Stewart occasionally referred to Plaintiffs as potential owners of MPG, those communications were made against the backdrop of continued negotiations with Levie which never ripened into an agreed upon fee—or even a substantive response from Levie. (Stewart Decl., ¶¶ 22, 24–26.) With no deal reached, ownership stayed with Stewart.

The financial records are equally empty. VECCO's and VECCO Wichita's books reflect no capital contribution by any Plaintiff, no capital account, and no Schedule K-1, distribution, or other owner payment to any of them; no Plaintiff has ever been a signatory on their bank accounts or guaranteed any obligation of these companies; and every financial statement, tax filing, lender submission, and beneficial ownership report prepared during the chief financial officer's tenure identifies Stewart as the owner. (*Id.* ¶¶ 57-58, 72; Metzger Decl. ¶¶ 4–6.)

From MPG's formation through the present, Stewart executed every stock purchase agreement and transition services agreement for MPG and VECCO. (Stewart Decl., ¶¶ 46–48, Exs. O – Q.) He also maintained signatory authority over VECCO and VECCO Wichita's bank accounts and directed the companies' finances and operations. (*Id.* ¶¶ 57–58.)



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

**4. The Kaman Wichita Acquisition**

On August 9, 2024, VECCO acquired Kaman Composites–Wichita pursuant to a stock purchase agreement among VECCO, Kaman Aerospace Group, Inc., and Kaman Composites–Wichita, which Stewart executed on VECCO's behalf. (*Id.* ¶ 47; Ex. P.) At closing, Stewart also executed a transition services agreement under which Kaman agreed to provide limited support while VECCO transitioned the acquired business onto its own infrastructure. (*Id.* ¶ 48; Ex. Q.) In the weeks that followed, Kaman Composites–Wichita was rebranded as VECCO Wichita, and Stewart and Bell assumed responsibility for its operations, including suppliers, customer disputes, inventory, payments, and accounts-payable issues. (Stewart Decl., ¶¶ 53, 55; Bell Decl., ¶¶ 3–4, 6.)

Today, it employs more than 70 people at a facility of over 100,000 square feet in Wichita, Kansas, where it manufactures structural composite assemblies and provides maintenance, repair, and overhaul services for commercial and military aircraft. (Stewart Decl., ¶ 54; Bell Decl., ¶ 15.) Levie, AIAC, and Batista are *nowhere* to be found in the ownership, management, or operation of VECCO Wichita.

**5. Stewart, through VAG, Inc., Purchases Falcon**

In November 2023, AIAC and VECCO submitted a nonbinding proposal concerning both Kaman Wichita and Jacksonville. (Compl. Ex. 27.) But by June 27, 2024, the proposal concerned only Kaman Wichita: it offered to purchase "all outstanding shares of Kaman Composites – Wichita, Inc.," identified VECCO as the purchaser, and stated that "Kaman Wichita" would provide market and revenue diversification. (Compl. Ex. 45.) The Complaint quotes that later document as though it still involved "Kaman Wichita and Jacksonville." (Compl. ¶ 103.) It does not. Kaman Jacksonville was ultimately sold via a separate agreement dated November 8, 2024, to "VECCO Aerospace Group, Inc., a Delaware corporation." (Stewart Decl., ¶ 62, Ex. R.)



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

VECCO Aerospace Group, Inc. is not owned by or affiliated with MPG. (Stewart Decl., ¶ 61; Stones Decl., ¶ 22.)

**6. The Trademark Applications and Their July 13, 2026 Abandonment**

AIAC Puerto Rico, which is not a party in this lawsuit, filed an *intent-to-use* application to register the VECCO mark on April 25, 2022. (Perez Decl., ¶ 5, Ex. V). That application was never converted to a use-based registration and was permitted to lapse on July 13, 2026. (*Id.* ¶ 6; Ex. W.) Two days after the lapse, on July 15, 2026, Stewart filed a use-based application to register the VECCO mark, which remains pending. (*Id.* ¶ 7, Ex. X.)

**7. Plaintiffs' Intimidation Campaign and Unauthorized Board Notices**

Shortly before filing this lawsuit, Levie's counsel, Marc Greenberg, began a campaign of threats designed to pressure Stewart into capitulating to Levie's demands. On July 19, 2026, Greenberg emailed Stewart's counsel: "***This is Brandon's last chance to try to resolve things before it all turns nuclear***. The MPG Member's meeting, tomorrow, is ***just the beginning of a parade of horribles for Brandon*** . . ." (*Id.* ¶ 2; Ex. S, emphasis added.) Otherwise, "the gloves come off . . . ." (*Id.*)

On July 20, 2026, Plaintiffs purported to convene a "Special Meeting of the Members of Michigan Precision Group LLC" by Zoom videoconference, which Stewart and Bell did not attend. Nevertheless, Plaintiffs purported to adopt resolutions directing management to produce ownership and financial records, ordering an independent accounting, removing Stewart from all management authority over MPG and its subsidiaries, and installing Levie as managing member in his place. (Compl. Ex. 41.)

Plaintiffs did not confine their campaign to correspondence, and they did not wait for this Court. On August 26, 2026—eight days after filing this action and while this Motion was pending—Levie issued a "Notice of Special Meeting of Members of Michigan Precision Group



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

LLC," signing it as "Majority Member," the very status this case exists to determine. (Perez Decl., ¶ 8, Ex. Y.) The meeting was noticed for September 7, 2026.

A second version bearing the same date proposes to adopt resolutions at that meeting which are equivalent to the relief Levie asks this Court to grant, self-executed. Reciting that "as the 100% owner of VECCO and VECCO Wichita, MPG directs," the notice would terminate Bell as chief executive officer and Traci Metzger as chief financial officer of both operating companies, effective immediately; strip each of any authority to act for them; terminate their agreements "for cause"; and reopen their compensation back to 2022. (*Id.* ¶ 9, Ex. Z.) The resolution also addresses the defense of this and two other lawsuits:

> Any corporate indemnification for Stewart, Bell, Metzger, and Stones shall be null and void. The Bagby & Associates and the Morrisson and Foerster law firms are not and shall not be authorized to represent MPG, VECCO, or VECCO Wichita in connection with any matters and shall return all deposits or advances provided by these entities or their affiliates by MPG, VECCO or VECCO Wichita. Any retainer agreements to represent MPG, VECCO or VECCO Wichita shall be null and void.

(*Id.* (errors in original).) Levie thus proposes, by his own notice and before this Court has determined that he is a member of MPG at all, to disqualify his adversaries' counsel and to void their indemnification.

On September 7, 2026, Levie and Batista went further, issuing a resolution purporting to terminate Bell, Metzger, and Stones, and remove Stewart as owner and manager—while naming no replacement for any of them. (*Id.* ¶ 10, Ex. AA; Metzger Decl., ¶ 13; Stones Decl., ¶ 20; Vernon Decl., ¶ 9.) In other words, Levie seeks to remove the CEO and CFO of two ITAR-registered aerospace manufacturers, in the middle of performance on complex aircraft programs; to strip the individual defendants of counsel and indemnification in three pending litigations; and to rearrange entities he has never had any role in operating. He asks this Court to supply the authority he lacks. That is the disruption Rule 65 exists to prevent.

These threats were gratuitous and unprofessional. Predicting an individual's personal bankruptcy and "reputational destruction" before any discovery, identifying which of his homes



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

will be unprotected from creditors, and warning that "the gloves come off" absent capitulation are not litigation positions. *See* Wyo. R. Prof'l Conduct 4.4(a). At this point, Defendants do not seek sanctions, but reserve the right to file for such relief.

### C. The Absence of Any Wyoming Operations

The remaining companies involved have no connection to Wyoming either: Cendry and VAG are Delaware corporations; Falcon is an LLC formed in Delaware and solely owned by VAG; VECCO is a Michigan corporation; VECCO Wichita is a Delaware corporation. Again, none has any operations, employees, facilities, or business activities in Wyoming. (Stewart Decl., ¶¶ 61–62; Bell Decl., ¶¶ 5, 16, Ex. A.) Even Plaintiffs appear to have no connection to Wyoming: AIAC is a Delaware corporation; Levie is a resident of Puerto Rico; Batista resides in New York.

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008). Plaintiffs must establish a likelihood of success on the merits, likely irreparable harm absent relief, that the balance of equities favors them, and that an injunction serves the public interest. *Id.* at 22; *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

The Tenth Circuit subjects injunctions that alter the status quo, mandate affirmative action, or give the movant substantially all the relief sought on the merits to heightened scrutiny. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070–71 (10th Cir. 2009). Plaintiffs seek all three.

**First, Plaintiffs seek to alter the status quo.** The status quo is the "last peaceable uncontested status existing between the parties before the dispute developed." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005). For more than four years, Stewart managed MPG and its subsidiaries, controlled their finances and operations, executed their transaction documents, and


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

acted on their behalf without interference from Plaintiffs. Plaintiffs themselves allege that Stewart "managed the day-to-day operations of MPG" and its subsidiaries. (Compl. ¶ 151.)

Plaintiffs now ask the Court to give immediate effect to resolutions Levie purported to adopt and displace that longstanding management structure. (Compl. Ex. 41.) Levie purports to exercise control through disputed member meetings and to remove Bell as CEO of VECCO and VECCO Wichita. (Exs. Z, AA.) That is not preservation of the status quo; it is a transfer of control before the Court has determined whether Levie has any membership or governance rights at all.

**Second, the Motion seeks merits relief.** A movant bears an "especially heavy" burden where preliminary relief would grant a substantial part of the ultimate relief sought. *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984). Plaintiffs ask the Court to issue a declaratory judgment that they own and control MPG. Yet they seek now to remove Stewart's authority, compel MPG's books and records, and appoint a special master to select MPG's counsel. Those remedies would give Plaintiffs the practical benefits of ownership before discovery and before they have proved they are members at all. *See Steede v. Levy.*, No. 25-2136-DDC-TJJ, 2025 WL 1029422 (D. Kan. Apr. 7, 2025) (denying emergency relief where putative shareholder challenged his removal and sought reinstatement, control over corporate finances and records, and removal of existing managers; finding such relief required heightened scrutiny).

## IV. ARGUMENT

### A. Jurisdiction and Venue: The Court Lacks Personal and Subject Matter Jurisdiction, and Venue Is Improper.

Personal jurisdiction must be established defendant by defendant. *Walden*, 571 U.S. at 284-86. Plaintiffs identify no Wyoming conduct by Stewart, Bell, VAG, Cendry, or Falcon that gave rise to the claims. Stewart and Bell reside outside Wyoming; VAG and Cendry are Delaware corporations; Falcon is a Delaware LLC operating in Florida; and the alleged conduct involving those defendants occurred principally in Michigan, Kansas, Florida, Delaware, and elsewhere. (Stewart Decl., ¶¶ 1, 61; Bell Decl., ¶¶ 13, 15–16, 18.) The fact that MPG and Skyhawk were



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

organized under Wyoming law cannot be imputed to other defendants. *See Frankel v. Guardian Law*, No. CH-2024-000009, 2024 WL 4547274, ¶¶ 2, 24, 32–39 (Wyo. Ch. Oct. 15, 2024). And none of the Defendants, including MPG and Skyhawk, conduct any operations or have any employees in Wyoming. (Stewart Decl., ¶¶ 1, 27, 34, 37; Bell Decl., ¶ 16.)

Plaintiffs also are not residents of Wyoming, and the record is devoid of any evidence suggesting that Stewart, Bell, VAG, Cendry, or Falcon purposefully directed activities at Wyoming residents. Injunctive relief cannot be granted on this record. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 n.1 (1982) (Powell J., concurring) ("A district court must have personal jurisdiction over a party before it can enjoin its actions.").

Venue is likewise not established under 28 U.S.C. § 1391(b). Section 1391(b)(1) does not apply because all Defendants do not reside in the same State. Section 1391(b)(2) does not apply because Plaintiffs identify no substantial part of the operative events or property in Wyoming: no acquisition at issue was negotiated or closed here; no operating facility, workforce, or relevant tangible property is here; and no alleged trade-secret acquisition, disclosure, trademark use, or third-party misrepresentation occurred here. The Motion supplies no basis to conclude that Wyoming is the proper venue for the broad relief requested.

Nor is there subject matter jurisdiction. This case is an ownership dispute over an LLC. In recasting this dispute as an alleged violation of the DTSA and the Lanham Act and filing this case in federal court, Plaintiffs are attempting to fit a square peg in a round hole. The absence of any viable federal claim in this case warrants dismissal for lack of subject matter jurisdiction.

**B. Plaintiffs Cannot Show a Likelihood of Success.**

**1. Plaintiffs Cannot Establish That Levie or Batista Became Members of MPG.**

Plaintiffs cannot establish they were members at formation of MPG, nor that they became members after it was formed. To determine the members of an LLC, Wyoming law asks whether the claimed members actually agreed to become members. If an LLC is to have more than one



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

member at formation, "those persons become members as agreed by them." Wyo. Stat. Ann. § 17-29-401(b). After formation, membership arises as provided in the operating agreement, through specified statutory transactions, or with the consent of all members. *Id.* § 17-29-401(d). Although an operating agreement may be oral or implied, it must still reflect an actual agreement of the members on sufficiently definite terms. *Id.* §§ 17-29-102(a)(xiv), 17-29-110(a); *Tallichet v. Jackson Hole Cmty. Radio, Inc.*, 2026 WY 56, ¶¶ 21–22, 589 P.3d 1261 (Wyo. 2026) (rejecting alleged oral agreement where essential terms were not "defined with certainty" and explaining that courts "do not have the power to supply indefinite terms"); *see also Kassirer v. Gotlib*, 248 A.D.3d 472, 472–73 (N.Y. App. Div. 2026).

Here, Plaintiffs point to no operating agreement that shows their membership in MPG—let alone one sufficiently definite to enter the sweeping injunctive relief Plaintiffs seek before any discovery or a merits decision. Plaintiffs largely point to negotiation documents and proposals between Levie and Stewart, not to final agreements. (Mot. 4–5, Compl. Exs. 2, 10–14, 16, 24.) Indeed, the primary chart that Plaintiffs rely on to support the "75/20/5" ownership split includes comments clearly indicating an agreement had *not* been reached such as asking Levie if the arrangement was "OK," proposing that Batista be "reward[ed]" with equity, and requesting Levie's "thoughts or comments." (Compl. Ex. 2.) Plaintiffs identify no acceptance. And without mutual acceptance, those communications do not transfer ownership to Levie. *See Morningside Church Prods., Inc. v. Am. Biotech Labs, LLC*, No. 6:20-CV-03090-MDH, 2023 WL 11951217, at *3 (W.D. Mo. June 5, 2023) (applying Wyo. Stat. Ann. § 17-29-401(b)) ("There is no signature of [the claimed LLC member], nor any other evidence, that a contract or agreement was formed as it relates to the formation of the LLC and its members. As a result, there is no evidence of consent to an agreement on behalf of [the claimed member]."); *see also Management Nominees, Inc. v. Skowronska*, No. 185-803, 2018 WL 8951121, at *4–5 (Wyo. Dist. Mar. 28, 2018) (denying


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

summary judgment as to LLC's chain of ownership and claimed original owner's legal interest in LLC, noting lack of certificate of membership or evidence of contribution to LLC's formation).[2]

Plaintiffs rely heavily on Stewart's statements around the MPG transaction (Compl. ¶¶ 48, 58; Pl. Exs. 1, 24), but they do not establish the agreement Plaintiffs must prove. Nor does any statement establish how Batista supposedly acquired a five-percent membership interest. A statement describing ownership is not itself the underlying agreement that Wyoming law requires.

More importantly, those statements do not stand alone. They conflict with the formal record and the parties' conduct that followed. Stewart, meanwhile, was repeatedly identified in company and governmental records as MPG's sole member or beneficial owner and alone exercised its governance authority. (Stewart Decl., ¶¶ 39–43, Exs. K – N.) At minimum, Stewart's early statements create a factual dispute about what the parties contemplated and whether an agreement was ever completed. They do not establish that Plaintiffs' asserted 75/20/5 ownership structure is "beyond serious dispute."

Nor does the record evidence show that any Plaintiff took steps consistent with becoming a member of MPG, such as discussing and agreeing on terms of an operating agreement, written or otherwise, or sharing the financial risk of the business. In the absence of evidence demonstrating any Plaintiff's actual, rather than merely contemplated, membership in MPG, Plaintiffs are not entitled to preliminary relief on their state law claims. *See Rehab Dep't, LLC v. Ark Post Acute Networks, LLC*, No. 23-CV-2554-SDM-LSG, 2024 WL 5372683, at *4 (M.D. Fla. Dec. 30, 2024), at *4–6 (concluding purported majority owner of Wyoming LLC failed to establish membership because LLC's sole member had not consented to stock exchange allegedly leading to transfer of ownership); *Morningside Church Prods., Inc.*, 2023 WL 11951217, at *3 (record did not support

[2] Plaintiffs make vague (and frankly irresponsible) accusations of criminal conduct relating to ITAR. The record provides no support for this; Plaintiffs do not even offer the actual registration. Their exhibits contain communications referring to an AIAC/VECCO registration and efforts to add Wichita—all at a time that Stewart believed the parties would be able to work out a deal. Plaintiffs cannot turn an incomplete regulatory record into conclusive proof of a Wyoming LLC's membership.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

finding of individual's LLC membership where K-1s identified individual only as a partner and there was no evidence of member consent).

**2. Plaintiffs' Claims for Injury to MPG Are Derivative and Improperly Pleaded.**

Even assuming Levie and Batista were members of MPG, much of the relief they seek belongs to MPG—not to them personally. Wyoming law permits a member to proceed directly only upon pleading and proving an injury "that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Wyo. Stat. Ann. § 17-29-901(b). Where the alleged wrong injures the entity and harms the member only through his ownership interest, the claim is derivative. *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶¶ 152–54, 437 P.3d 758, 806–07 (Wyo. 2019); *Fritchel v. White*, 2019 WY 117, ¶¶ 12–16, 452 P.3d 601 (Wyo. 2019). Wyoming does not permit a repackaging of derivative injuries as direct claims. *Fritchel*, 2019 WY 117, ¶¶ 22–23.

That is precisely what Plaintiffs do here. They allege that Stewart diverted MPG's subsidiaries, MPG's assets, MPG's cash and receivables, MPG's corporate opportunities, and property that they expressly say "rightfully belong[s] to MPG." (Compl. ¶¶ 152–54.) Indeed, their requested constructive trust would restore the allegedly diverted property "for the benefit of MPG," and their fiduciary-duty claim attacks, among other things, alleged transfers of MPG's subsidiaries and payments from MPG's assets. (Compl. ¶¶ 154, 185.) Those are injuries to MPG. Any resulting diminution in the value of Plaintiffs' alleged membership interests is derivative, not an independent injury permitting them to recover MPG's losses personally.

Wyoming imposes specific requirements for pursuing those claims. A member must make demand that the company bring the action or establish that demand would be futile, and the complaint must plead the demand or grounds for futility with particularity. Wyo. Stat. Ann. §§ 17-29-902, -904; *Mantle*, 2019 WY 29, ¶ 154. Federal Rule 23.1 likewise requires particularized allegations concerning the plaintiff's efforts to obtain action from the entity or the reasons no effort



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

was made. Plaintiffs did neither. Their Complaint does not purport to bring a derivative action or plead demand futility. The only demand alleged was a books-and-records demand under § 17-29-410, not a demand that MPG prosecute the claims Plaintiffs now assert on its behalf.

Thus, Plaintiffs face a problem either way. If Levie and Batista are not members, they cannot invoke MPG's rights at all. If they are members, they still cannot bypass Wyoming's derivative-action requirements and recover directly for alleged injuries to MPG.

**3. The DTSA Claim Is Circular and Independently Defective.**

The DTSA creates a civil action for an "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). An "owner" is the person or entity in whom rightful legal or equitable title to, or a license in, the trade secret is reposed. *Id.* § 1839(4). Plaintiffs' own Complaint identifies the alleged owners as "MPG, VECCO, and VECCO Wichita"—not Levie, Batista, or AIAC. (Compl. ¶ 134.) MPG is a defendant; VECCO and VECCO Wichita are not plaintiffs. Plaintiffs' theory is therefore circular: Levie and Batista say they own MPG and from that infer a right to sue over the operating companies' information. But Wyoming law treats an LLC as "an entity distinct from its members." (Wyo. Stat. Ann. § 17-29-104(a).) Even if Levie ultimately establishes a membership interest, that does not personally vest him with title to MPG's assets, much less to trade secrets owned by separate corporate subsidiaries. The Motion never bridges that gap.

That defect is compounded by Plaintiffs' inability to identify any alleged trade secrets with sufficient specificity. They offer only broad categories: manufacturing processes, specifications, customer and supplier lists, pricing, contracts, and ITAR-regulated technical data. (Mot. at 14-15.) The Tenth Circuit recently rejected the same approach, explaining that "long lists of general areas of information containing unidentified trade secrets," "catchall phrases," and categories do not identify a trade secret with sufficient particularity; a claimant must point to tangible trade-secret material. *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1089 (10th Cir. 2025); *see also LS3*


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

*Inc. v. Cherokee Nation Strategic Programs, L.L.C.,* No. 21-1385, 2022 WL 3440692, at *5 (10th Cir. Aug. 17, 2022).

Finally, Plaintiffs do not show misappropriation. The DTSA requires acquisition by improper means or unauthorized disclosure or use of an identified secret. 18 U.S.C. § 1839(5). Their principal theory is that Stewart "purport[ed] to transfer" VECCO and VECCO Wichita into Cendry or Falcon. (Mot. 15.) A dispute over an entity's upstream ownership or portfolio branding is not itself acquisition, disclosure, or use of confidential information. Plaintiffs identify no specific secret removed from VECCO or VECCO Wichita, copied to a competitor, disclosed outside those businesses, or used in a competing product. *See Camick v. Holladay*, 758 F. App'x 640, 645 (10th Cir. 2018) (continued possession alone is not acquisition, disclosure, or use). Their corporate-ownership theory cannot be transformed into a federal trade secret claim by labeling all company information "misappropriated."

The premise is also wrong. VECCO and VECCO Wichita assets were not transferred to Cendry, Falcon, or any other entity. Their physical plants, equipment, processes, and business infrastructure remain within MPG's corporate structure. (Stewart Decl., ¶ 60; Bell Decl., ¶ 27.)

**4. The Lanham Act Claim Fails Because the Plaintiffs Do Not Own the Marks.**

To prevail under 15 U.S.C. § 1125(a)(1)(A), Plaintiffs must first establish that a named Plaintiff has a protectable interest in the unregistered VECCO marks. *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052–53 (10th Cir. 2021); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). Their own pleading shows otherwise. It alleges that the mark is owned "through [AIAC's] affiliate AIAC Puerto Rico Holdings LLC," that commercial use occurred "by permitting MPG to use" it, and that "[a]ll use" inures to AIAC Puerto Rico, thereby conferring the common-law rights. (Compl. ¶ 163.) ***But AIAC Puerto Rico is not a plaintiff.*** Nor do Plaintiffs allege that any named Plaintiff owns the marks, holds an exclusive license, or possesses the right to enforce them.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Plaintiffs' trademark theory is also circular. Neither Plaintiffs nor AIAC Puerto Rico own a registered VECCO mark. Plaintiffs therefore must establish common law rights through actual use of a distinctive mark in commerce and priority over Defendants. *Underwood*, 996 F.3d at 1053–54; *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) ("One who first uses a distinct mark in commerce thus acquires rights to that mark.").

Plaintiffs do not claim that AIAC Puerto Rico manufactured or sold anything under the VECCO marks. Instead, they allege MPG and its operating companies used the marks and that this use somehow accrued to AIAC Puerto Rico. (Compl. ¶ 163.) But use by a "related company" inures to another entity only where control exists, including control "with respect to the nature and quality of the goods or services." 15 U.S.C. §§ 1055, 1127. Plaintiffs identify no evidence that AIAC Puerto Rico exercised quality control over VECCO's manufacturing operations. Their theory depends on the premise that AIAC controlled MPG—the very ownership and control issue this lawsuit asks the Court to decide. But even there, Plaintiffs allege only that Levie and Batista—*not AIAC*—are part owners of MPG. Plaintiffs cannot assume control over MPG to manufacture a trademark right and then use that supposed trademark right as evidence that they controlled MPG.

The pending applications do not cure these defects. Plaintiffs repeatedly confuse the applications as "registered" (Compl. ¶¶ 14, 44), but AIAC Puerto Rico merely **applied** to register the marks, the applications were abandoned for failure to file Statements of Use, and after revival they remain only "published and allowed." (Compl. ¶¶ 164, 169.) A pending application carries none of the statutory presumptions that accompany a registration. 15 U.S.C. § 1057(b); *1-800 Contacts*, 722 F.3d at 1238.[3]

### C. Plaintiffs Have Not Shown Irreparable Harm.

#### 1. Plaintiffs Have Pled Their Injury as Money Damages.

[3] Plaintiffs' alternative claim under 15 U.S.C. § 1114 also fails because § 1114 protects only registered marks.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Plaintiffs' alleged injury is fundamentally economic. "Simple economic loss" is not irreparable because it can be remedied through damages. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Plaintiffs' own Complaint proves the point. They value their alleged loss at more than $50 million and identify the claimed injuries as lost ownership value, lost distributions, diminution in their membership interests, and related financial losses. (Compl. ¶¶ 83, 188.) Those are compensable injuries, not a basis for emergency relief.

More fundamentally, nothing about the ownership dispute must be decided preliminarily to preserve Plaintiffs' remedy. The passage of time does not prevent the Court from deciding who owns MPG or calculating the economic consequences of that ownership. Plaintiffs therefore do not need control of the company *now* to obtain complete relief *later*.

Courts have denied preliminary relief in precisely that circumstance. In *Hotel 24, LLC v. Estate of Vallario*, the plaintiff claimed a two-thirds ownership interest in a business and sought an injunction giving it immediate control. The court denied that relief—even though it found the plaintiff likely to prevail—because the injunction would effectively decide the disputed ownership and control question before judgment and the resulting injuries were monetary. *Hotel 24, LLC v. Estate of Vallario*, No. 652825/2014, 2014 WL 5872606 at *12 (N.Y. Sup. Ct. Nov. 13, 2014).

Plaintiffs' reliance on *RoDa Drilling Co. v. Siegal* does not change this analysis. There, the record **already established** the plaintiff's ownership rights in income-producing real property, and expert testimony showed that the loss of day-to-day control was causing missed opportunities and damages that could not be calculated at trial. *RoDa Drilling Co.,* 552 F.3d at 1210–11. Here, the supposed ownership right is the central disputed issue, Plaintiffs offer no comparable evidence of incalculable injury, and their own pleading assigns their alleged loss a dollar value.

Plaintiffs' invocation of "dissipation" does not change the result either. They identify no pending sale, liquidation, extraordinary distribution, new lien, or other imminent transaction that threatens to put MPG or its assets beyond the Court's reach. Their Complaint instead alleges,



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

largely on information and belief, financial losses for which they expressly seek more than $50 million. (Compl. ¶¶ 83, 188–91.) That is quantifiable. It does not require an emergency injunction.

**2. No Trade Secret or Trademark Injury Is Imminent or Irreparable.**

Plaintiffs cannot establish irreparable harm merely by invoking trade secrets or trademarks. Injunctive relief remains an equitable remedy requiring a showing of irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006) (rejecting categorical rules favoring injunctions and requiring application of traditional equitable principles).

The governing statutes do not rescue Plaintiffs. The DTSA provides only that a court "may" enjoin actual or threatened misappropriation. 18 U.S.C. § 1836(b)(3)(A)(i). The Tenth Circuit has therefore squarely held that the DTSA creates no presumption of irreparable harm and that, without actual evidence of such harm, a preliminary injunction cannot issue. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141–43 (10th Cir. 2017) (reversing preliminary injunction on DTSA claim where monetary damages could be quantified and adequately compensate plaintiff). Plaintiffs identify no VECCO trade secret disclosed outside VECCO or VECCO Wichita, much less to a competitor or anyone threatening its secrecy. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118–19 (2d Cir. 2009).

The trademark theory fares no better. Although the Lanham Act provides a rebuttable presumption of irreparable harm, it arises at the preliminary-injunction stage only "upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a). Plaintiffs cannot make that threshold showing. No named Plaintiff owns the VECCO marks; the Complaint instead alleges that the rights belong to nonparty AIAC Puerto Rico, based largely on the disputed premise that MPG's use should be attributed to it. Without a protectable right, § 1116(a)'s presumption never attaches.

**3. Plaintiffs' Delay Refutes Their Claim of Emergency.**

Delay in seeking preliminary relief cuts against a claim of irreparable harm. *KeyBank Nat'l Ass'n v. Williams*, No. 21-1384, 2022 WL 402379, at *5 (10th Cir. Feb. 10, 2022); *GTE Corp.*, 731


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

F.2d at 678 (holding that delay in seeking relief "undercuts any presumption that [trademark] infringement alone has caused irreparable harm."). Plaintiffs' own conduct belies any emergency. They remained uninvolved in MPG's affairs for years and then waited sixty-three days after the Cendry press release—the event they now portray as revealing Stewart's alleged scheme—to file suit and seek emergency relief.

**4. The Alleged Reputational and Market-Confusion Harms Are Speculative.**

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will *surely result* without their issuance." *Schrier*, 427 F.3d at 1267 (emphasis added). First and foremost, Plaintiffs cannot establish a right to the VECCO mark. Even if they could, Plaintiffs identify no lost customer or any commercial harm from the use of the VECCO marks. An unsupported allegation that unidentified customers may have expressed concern does not establish that reputational or marketplace injury is likely—much less that it will "surely result"—absent an injunction. That is not enough to justify extraordinary relief.

**5. The Record Cannot Support Extraordinary Relief.**

Plaintiffs ask the Court to grant extraordinary relief on allegations they themselves do not claim to know. Several of the assertions central to their motion are pled only "upon information and belief." (Compl. ¶¶ 23, 118–20, 187.) A verified complaint may be treated as evidentiary material "if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citations omitted). A pleading qualified by "information and belief" may frame a theory; it does not, without more, establish the concrete and imminent injury necessary for extraordinary relief.

**D. The Balance of Equities and the Public Interest Weigh Against an Injunction.**

The proposed order would impose immediate operational risk on active aerospace manufacturers. Plaintiffs ask the Court to enjoin Stewart from acting on behalf of MPG, VECCO, or VECCO Wichita in any capacity pending the resolution of this case. Transferring management



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

of aerospace facilities mid-performance threatens continuity of supply for programs Plaintiffs themselves describe as critical. Plaintiffs cannot invoke the criticality of the work as a reason to destabilize the entities performing it. *See Drill Tech Drilling & Shoring, Inc. v. Goshen Cnty. Irrigation Dist.*, No. 26-CV-144-SWS, 2026 WL 1990826, at *13 (D. Wyo. July 2, 2026) (in case alleging failure to comply with state law competitive bidding process for public construction projects, finding balance of equities and public interest factors weighed heavily against granting injunctive relief, citing serious risks of irrigation tunnel collapsing if excavation project was delayed).

The cost of Plaintiffs' requested management transfer and operational freeze would also be significant: VECCO and VECCO Wichita carry roughly $2.7 million in monthly operating costs against approximately $3.3 million in monthly revenue, with some $4.2 million in open payables, and Stewart and Metzger are the only signatories on the companies' accounts—so barring Stewart while Levie's notice terminates Metzger would leave no one able to make payroll for approximately 150 employees. (Metzger Decl., ¶¶ 10–11; Stewart Decl., ¶¶ 69, 71; Bell Decl., ¶ 23.) Disrupting the current management without qualified replacements in place would cause significant harm and disruption by jeopardizing active production schedules and commitments to customers. (Bell Decl., ¶¶ 21, 24–25; Vernon Decl., ¶¶ 10–13.) And Rule 65(d) requires an injunction to state specifically what conduct is restrained; an undefined ban on "diminishing" every asset of operating companies does not provide workable notice. *See* Fed. R. Civ. P. 65(d)(1); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

**E. Rule 53 Does Not Authorize Appointment of a Master to Select Party's Counsel.**

Plaintiffs' request for a special master rests on the same ownership dispute regarding MPG: that Plaintiffs are MPG's majority members, that their July 20 resolutions are "valid, binding, and enforceable," and that Stewart was lawfully removed from management and that Stewart therefore lacks authority to retain counsel for MPG. (Compl. ¶ J.)



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Rule 53 does not supply that authority. It permits appointment for duties the parties consent to, specified nonjury trial proceedings, or pretrial/posttrial matters that "cannot be effectively and timely addressed by an available district judge or magistrate judge." Fed. R. Civ. P. 53(a)(1)(C). Plaintiffs identify no consent, no qualifying trial function, and no pretrial matter the Court itself cannot effectively or timely address. Their proposed master would instead select MPG's litigation counsel, oversee compliance with the injunction, and facilitate Plaintiffs' access to MPG's books and records.

Plaintiffs' principal Supreme Court citation says the opposite of their parenthetical. They describe *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259 (1957), as "affirming broad discretion to appoint masters in proper complex commercial cases." (Mot. 22.) ***La Buy*** **does the opposite.** It affirmed mandamus ***vacating*** the references. It explained that masters exist to aid judges, "not to displace the court," and held that complexity is not a justification for referral but "an impelling reason for trial before a regular, experienced trial judge." 352 U.S. at 256, 259.

The Wyoming authorities do not supply the missing authority. *Bowen v. Smith*, 838 P.2d 186, 195 (Wyo. 1992), stands for the ordinary proposition that entity counsel represents the entity rather than individual owners; it does not decide which of two competing ownership factions may select counsel. *Woods v. Wells Fargo Bank Wyoming*, 2004 WY 61, ¶¶ 24, 26–29, 90 P.3d 724, likewise assumes that lawful governance authority has been established. Here that is the issue to be adjudicated. Neither case allows the Court to presume that Plaintiffs validly removed Stewart before adjudicating whether they had authority to do so in the first place. The Court should deny the Rule 53 request and address any concrete ethical issue directly if and when properly presented.

## V. CONCLUSION

The Court should deny the Motion for Preliminary Injunction and Appointment of a Special Master.



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

DATED: 8th day of September, 2026

Respectfully submitted,

MORRISON & FOERSTER LLP

*By: /s/ David A. Perez*

David A. Perez, WSBA No. 43959 *(Pro Hac Vice)*
davidperez@mofo.com
Christian W. Marcelo, WSBA No. 51193
CMarcelo@mofo.com
Morrison & Foerster LLP
925 4th Avenue, Floor 36
Seattle, WA 98104-1157
Telephone: (206) 327-6385
Facsimile: (206) 260-8813

Daniel B. Baskerville, NY Bar No. 5934211 *(Pro Hac Vice)*
DBaskerville@mofo.com
Morrison & Foerster LLP
250 West 55th Street,
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Sara F. Stearns, CA Bar No. 326888 *(Pro Hac Vice Forthcoming)*
SStearns@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard,
Los Angeles, CA 90017-3543
Telephone: (213) 892-5000
Facsimile: (213) 892-5454

HOLLAND & HART LLP

Jasmine M. Peters, WY Bar No. 7-5714
JMPeters@hollandhart.com
2020 Carey Avenue, Suite 800
Cheyenne, WY 82001
Telephone: (307) 778-4242

*Attorneys for Defendants Brandon Stewart, Robert Bell, Vecco Aerospace Group, Inc., Cendry Capital, Inc., Falcon Jacksonville, LLC d/b/a/ Vaero, and Skyhawk Capital, LLC*