**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| LEONARD LEVIE, et al.,<br>Plaintiffs,<br>v.<br>BRANDON STEWART et al.,<br>Defendants. | Case No. 2:26-cv-00240-KHR<br><br>**DECLARATION OF MARK STONES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**DECLARATION OF MARK STONES**

I, Mark Stones, declare and state as follows:

1. I am a resident of North Carolina. I hold a minority ownership interest in VECCO Aerospace Group, Inc. ("VAG"), and serve as a member of the board of directors of VAG. I have no ownership interest in Michigan Precision Group, LLC ("MPG"), Vital Engineered Components Company, Inc. ("VECCO"), or VECCO's Wichita business. The statements below are based on my personal knowledge and direct observations, and I could testify to them competently if called as a witness.

## I. BUSINESS ASSOCIATION WITH LEONARD LEVIE

2. I have been involved in approximately ten business ventures involving American



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

Industrial Acquisition Company ("AIAC") or AIAC-affiliated companies as an independent contractor since approximately April 2017. I have served as chairman of certain companies in which Leonard Levie held an ownership interest, and I have worked directly with Mr. Levie on multiple transactions over approximately nine years. In those transactions, I did a variety of tasks including pre-acquisition work such as advising on due diligence, transition services agreements, and purchase agreements with sellers as well as post-acquisition work, such as operational supervision, corporate restructuring, and general strategizing and planning.

3. Over the past nine years of my business association with Mr. Levie, I became familiar with how Mr. Levie behaves when he is interested in an acquisition, and how he behaves when he is not.

4. In the acquisitions in which I have worked with Mr. Levie and he was interested in pursuing the transaction, he was highly engaged. He communicated frequently about the transaction, often through multiple calls, emails, or text messages in a day; participated actively in negotiations; and provided direction regarding material deal terms. He also traveled to visit target facilities. In my experience, Mr. Levie's involvement in a transaction he intended to pursue was not subtle or occasional. It was constant and consistent.

5. I personally observed that level of engagement in connection with a 2017 acquisition that Brandon Stewart and I negotiated. Mr. Levie traveled to France for a meeting with company management before closing. Leading up to the acquisition, he was in frequent communication with Mr. Stewart and me about the transaction and the negotiations. Although Mr. Levie did not attend the final negotiations in Paris, he participated by telephone during breaks and directed Mr. Stewart and me to seek material concessions on deal terms. That was a transaction in which Mr. Levie held an ownership interest, and his conduct was typical of how he behaved when he had an ownership interest.

6. Moreover, when Mr. Levie held an ownership interest in a business, he required extensive and regular financial reporting, including daily cash reports, annual budget information,



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

performance versus budget analyses, and end-of-year financial summaries. His accountants would separately request bank statements and currency balances at least once a year for tax-filing purposes.

7. In the transactions in which I was personally involved, I do not recall an acquisition in which Mr. Levie acquired a company but remained uninvolved in the negotiations or did not attempt to influence material transaction terms.

8. By contrast, I have observed Mr. Levie disengage from potential acquisitions or business deal he ultimately did not pursue. He did not typically say he was uninterested. He simply stopped substantively responding to communications or responded sporadically, and had limited if any inquiries about the transaction. Silence, in my experience with Mr. Levie, was how he often declined.

9. On April 14, 2022, the day before the closing of the MB Aerospace Sterling Heights, Inc. ("MB Aerospace") acquisition, I met with Mr. Levie in Philadelphia to discuss a business matter unrelated to this lawsuit. Mr. Levie did not mention the MB Aerospace acquisition. If Mr. Levie had intended to participate in that acquisition, I would have expected him to mention it, particularly given that we were together the day before closing and were discussing other business matters at the time.

10. Between approximately January 30, 2023, and February 1, 2023, I met with Mr. Levie in New York in which we discussed, among other topics, the financial status and performance of various companies in which I was involved with him. In those meetings he asked detailed questions about those companies' financial condition and performance. He never once asked me about MPG or VECCO. He did not ask about their revenues, bank accounts, employee headcounts, budgets, operating performance, or business strategy.

## II. MR. LEVIE'S LACK OF INVOLVEMENT IN BUSINESS AFFAIRS OF MICHIGAN PRECISION GROUP, LLC AND ITS SUBSIDIARIES

11. Beginning in approximately May 2022, Mr. Stewart retained my services to assist him and Robert Bell III with operational and strategic advisory work relating to VECCO and

VECCO Wichita.

12. With respect to VECCO, I served as Mr. Bell's principal advisor after the close of the MB Aerospace acquisition, and assisted Mr. Bell with preparing customer pricing, negotiating price increases, renegotiating leases with two separate landlords, and working through other commercial and operational issues facing the business.

13. With respect to VECCO Wichita and Falcon Jacksonville, LLC d/b/a VAERO ("VAERO"), I participated in the pre-acquisition due diligence process, including visiting the facility, meeting personnel, and advising on aspects of the sale and purchase agreement. I did not observe Mr. Levie or AIAC participate in this due diligence process at any point. To my knowledge, Mr. Levie did not conduct a site visit, did not meet personnel, and did not have input on or execute the sale and purchase agreement.

14. Post acquisition, I remained involved in VECCO, VECCO Wichita, and VAERO, by assisting Mr. Bell with strategic decision making on an as-needed basis. Mr. Stewart engaged me and arranged for my compensation for VECCO and VECCO Wichita, and I looked to Mr. Stewart for direction on those companies. I was not paid by MPG, VECCO, or VECCO Wichita, but rather through Skyhawk Capital, LLC, a company owned by Mr. Stewart. Mr. Levie was not involved in any of the post-acquisition work either.

15. Mr. Levie did not retain me, direct my work, or arrange for my compensation to be paid through MPG, VECCO, VECCO Wichita, or VAERO. No Plaintiff retained me, directed my work, or arranged my compensation in connection with any of these businesses.

16. In my dealings with VECCO and VECCO Wichita, Mr. Stewart was the person I understood to have authority to make decisions for those companies. He was the person I dealt with concerning operations, financing, personnel decisions, lease negotiations, customer pricing, and acquisition strategy and due diligence. When I had questions or needed direction, I went to Mr. Stewart. I never went to Mr. Levie for any of those things, and Mr. Levie never reached out to me concerning any of them. I did not observe Mr. Levie exercise any authority over MPG,


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FLOOR 36
SEATTLE, WA 98104-1157

VECCO, or VECCO Wichita.

17. I also did not observe Mr. Levie engage with the acquisition of VECCO Wichita at anything approaching the level of involvement I had observed when he intended to participate in other acquisitions. In particular, to my knowledge, he has not visited any of the facilities, participated in negotiations with any of the sellers, provided direction concerning material deal terms, or participated in the post-closing operation or restructuring of the business.

18. Based on the pattern I observed over approximately nine years and roughly ten businesses with Mr. Levie as the majority owner, I would have expected him to communicate regularly concerning the transaction and, after closing, to seek information concerning the company's financial performance and to participate in discussions concerning its management, strategy, and operations. He did not do so.

19. Mr. Levie never contacted me about MPG, VECCO, or VECCO Wichita. I became aware of an August 26, 2026, notice of a purported members' meeting of MPG signed by Mr. Levie as "Majority Member," which proposed to revoke Mr. Stewart, Mr. Bell, and Traci Metzger's authority to act for MPG, VECCO, and VECCO Wichita.

20. On September 7, 2026, I became aware of another notice from Mr. Levie, signed by him and Mr. Batista, purporting to memorialize actions taken at the "Special Meeting," including terminating the individuals serving as CEO and CFO of VECCO and VECCO Wichita, removing Mr. Stewart as owner and manager, and terminating me. The notice identifies no replacements for any of those positions and purports to leave the companies without a CEO, CFO, or manager responsible for operating their businesses. No rational business owner would act in this manner.

21. Before the present dispute arose, I never observed Mr. Levie or any of the other Plaintiffs exercise or attempt to exercise management authority over MPG, VECCO, or VECCO Wichita. Among other things, I am not aware of them ever having directed employees of those companies, approving budgets or expenditures, making personnel decisions, negotiating customer

or supplier matters on their behalf, participating in recurring management meetings, or otherwise making operating decisions for those businesses.

22. VAG is a separate corporate entity from MPG. I hold a minority ownership interest in VAG. The acquisition of the Jacksonville business from Kaman was undertaken through VAG, not MPG. The Jacksonville business is not owned by MPG or a part of MPG's corporate structure. No Plaintiff has any ownership interest in VAG. No Plaintiff participated in the decision to create VAG, was consulted about its formation, or was involved in the acquisition of VAERO.

I declare under penalty of perjury under the laws of the State of Wyoming that the foregoing is true and correct.

DATED this 8th day of September, 2026, at Concord, North Carolina.

Signed by:
Mark Stones
B1J0CZ17313D4EB...

Mark Stones