**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| LEONARD LEVIE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRANDON STEWART et al.,<br><br>Defendants. | Case No. 2:26-cv-00240-KHR<br><br>**DECLARATION OF TRACI METZGER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## DECLARATION OF TRACI METZGER

I, Traci Metzger, declare and state as follows:

1. I am the Chief Financial Officer ("CFO") of Falcon Jacksonville LLC d/b/a VAERO. I also serve as CFO of Vital Engineered Components Company, Inc. ("VECCO") and VECCO Wichita. I am a financial professional with over 25 years of experience in financial management in government defense and commercial contract manufacturing. I hold a bachelor's degree in accounting and a master's degree in business administration. In my roles I am responsible for, and have custody of or access to, the books and records of each of these three companies, including their general ledgers, bank records, financial statements, tax filings, and lender reporting. The statements below are based on my personal knowledge and on those records, maintained in

the ordinary course of business. If called as a witness I could and would testify competently to these matters.

2. I was hired into my role as CFO of VAERO by Brandon Stewart and Robert Bell III on approximately November 8, 2024. I was appointed to serve as CFO of VECCO Wichita on approximately the same date. In my role as CFO I report directly to Mr. Bell. Mr. Stewart has been the person from whom I have taken direction on financial matters requiring owner-level approval.

3. Since my appointments as CFO of VECCO, VECCO Wichita, and VAERO, I have worked alongside Mr. Stewart and Mr. Bell in managing these companies. My responsibilities include overseeing company finances, managing budgeting and cost accounting, and addressing financial issues as they arise at all three facilities.

4. The financial records of VECCO and VECCO Wichita reflect no capital contribution by any of the Plaintiffs—Leonard Levie, Jonathan Batista, or American Industrial Acquisition Corporation ("AIAC")—at any time. No capital account has ever been established or maintained for any of them on the books of either company. I am aware of no record of either company receiving funds from any Plaintiffs. I am not aware of any records showing that either VECCO or VECCO Wichita has issued a Schedule K-1, distribution, dividend, or other owner payment to Mr. Levie, Mr. Batista, or AIAC. I have not prepared, signed, or authorized any such document or payment, and I have located none in the companies' records.

5. No Plaintiff is or has been a signatory on any bank account of VECCO, VECCO Wichita, or VAERO, and no Plaintiff holds or has held authority to authorize disbursements, execute checks, or bind any of these companies financially. To my knowledge, no Plaintiff has guaranteed, secured, or become obligated on any indebtedness, lease, or supplier obligation of these companies.

6. In all financial statements, tax filings, lender submissions, insurance applications, and beneficial ownership reporting prepared during my tenure, Mr. Stewart has been identified as

the owner. No Plaintiff has been identified as an owner of VECCO or VECCO Wichita in any financial or regulatory document I have prepared, reviewed, or filed. No Plaintiff has ever asked me to correct or amend any such document.

7. No Plaintiff has ever requested a financial statement, budget, forecast, bank statement, tax return, or any other financial record of VECCO, VECCO Wichita, or VAERO from me. No Plaintiff has participated in any budget approval, lender discussion, audit, or year-end close during my tenure.

8. The first time I was made aware that Mr. Levie and Mr. Batista claimed to be part owners of VECCO or VECCO Wichita was on or around July 8, 2026, when I received an e-mail from Plaintiffs' counsel, Marc Greenberg, purporting to call a meeting on behalf of the "majority member" of MPG and seeking confidential financial information of the company. This was highly unusual to me because the notice came from Mr. Levie, someone whom I had no prior knowledge of, whom I had never met or communicated with before, who was not listed on any of VECCO or VECCO Wichita's financial documents, and who had never played any role in managing these companies.

9. Prior to receiving that email in July 2026, I received no communications of any kind from any Plaintiff in this matter concerning the operations, finances, books and records, personnel, or customers of VECCO, VECCO Wichita, or VAERO. I have never met Mr. Levie or Mr. Batista, and to my knowledge, I have never communicated with them before about anything, including these companies.

10. I understand Plaintiffs seek an order barring Mr. Stewart from acting on behalf of VECCO or VECCO Wichita and also seek to remove Mr. Bell and me from our positions. Based on the companies' financial records, an interruption of that kind would result in significant losses. The combined monthly operating costs of VECCO and VECCO Wichita—including payroll, facility costs, raw materials, and supplier payments—are approximately $2.7 million, based on the

companies' financial records for calendar year 2026. These facilities combined produced approximately $3.3 million in revenue each month. A disruption in management would lead to an operational disruption, which would be a financial disaster to these companies, and would result in a loss of goodwill to our customers and employees related to the leadership team bringing stability and credibility to operations. These facilities employ highly skilled personnel that are not easily replaced. Payroll and benefits are approximately $480,000 per month.

11. There are also open accounts payable balances of approximately $4.2 million, which would still require payment. Further, materials in this industry have a long lead time. There are material requirements and open purchase orders with suppliers to support ongoing production that would need to be honored in order to keep the supply chain support flowing. A disruption in production would have a significant impact on customer relations. Some customer contracts provide for late delivery penalties and other costly consequences. We could experience significant breach-of-contract or other damages claims from customers, loss of contract awards, and a complete stall in any open negotiations with customers, as well as, suppliers.

12. I have reviewed a notice of a "Special Meeting" of members of MPG dated August 26, 2026, signed by Mr. Levie as "Majority Member." It would terminate me as CFO of VECCO and VECCO Wichita effective immediately, revoke all my authority to act for those companies, terminate my agreements "for cause," and reopen my compensation and benefits going back to 2022. It names no successor.

13. On September 7, 2026, I received another notice from Mr. Levie, signed by him and Mr. Batista, purporting to memorialize actions taken at the "Special Meeting," including terminating Mr. Bell and me in our roles as Chief Executive Officer ("CEO") and CFO, respectively, removing Mr. Stewart as owner and manager, and terminating Mark Stones from all management and consulting roles. Again, this notice identifies no replacements for any of those positions and thus purports to leave the companies without a CEO, CFO, or manager responsible

for operating their businesses. Terminating a CFO without naming a successor is a patently unreasonable approach to business for anyone purporting to own a business.

I declare under penalty of perjury under the laws of the State of Wyoming that the foregoing is true and correct.

DATED this 8th day of September, 2026, at Jacksonville, Florida.

Signed by:
Traci Metzger
5F6158D7D27E427

Traci Metzger